IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: 2:19-CR-006 |
| | ) | |
| vs. | ) | |
| | ) | |
| GARY BLAIR SHAFFER | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

For twenty-five years, Defendant Gary Blair Shaffer was a law enforcement professional. As a patrol officer and eventually Chief of the City of Manning Police Department, Shaffer knew the rules, and he held others accountable for breaking them. Shaffer has now broken the rules himself. And in anticipation of his sentencing, the Government asks nothing of Shaffer that he has not asked of the hundreds, perhaps thousands, of people who have worn his handcuffs. We are asking that he serve a lawful term of incarceration.

Unlike many of those Shaffer has arrested and charged – and many of the defendants who appear in this Court every day – Shaffer was not born to poverty or a broken home. He did not have a troubled youth. He does not suffer the disease of addiction. Rather, Shaffer stole nearly $80,000 in cash from the Manning Police Department because he simply wanted the money. He then lied about his theft to the FBI – twice. The brazenness of Shaffer's theft and his attempts to escape accountability reflect a contempt for the trust placed in him by the public, and the very principle of the rule of law. No person is above it. The Government therefore respectfully asks the Court to deny Shaffer's motion for variance and to sentence him to a guidelines sentence, specifically 12 months and 1 day of incarceration.

## **ARGUMENT**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  Once that is completed, the district court must give both parties an opportunity to argue for whatever sentence they deem appropriate and the district court then consider[s] all of the § 3553(a) factors to determine whether they support the sentence requested by a party."  *United States v. Susi*, 674 F.3d 278, 282 (4th Cir. 2012) (internal quotation marks and citations omitted).

The Government first will discuss Shaffer's pending objections to the Presentence Investigation Report ("PSR"), and next discuss the application of the § 3553(a) factors.

### **Status of the Objections and Applicable Guideline Range**

Although Shaffer initially raised five objections to the PSR, only one substantive objection need be addressed by the Court.[1]  Specifically, Shaffer objects to his 2-level obstruction of justice enhancement, on the grounds that it is duplicative of his false statement conviction, and that his dishonesty never "significantly" obstructed or impeded the investigation or prosecution of the case. In addition, Shaffer states that he "only lied to the FBI on one occasion," on February 3, 2017. The Government disagrees.

As an initial matter, the Probation Officer's response, as expressed in the November 26, 2019 Addendum is correct.  Shaffer was charged with making two false statements to the FBI, on December 2, 2016 and February 3, 2017, in violation of 18 U.S.C. § 1001 (Counts 4 and 5, respectively).  Although Shaffer pleaded guilty to only one of these counts (Count 5), his

---

[1] Shaffer's first objection challenged the phrasing of Paragraph 26 in the PSR, and the USPO accommodated this objection without objection from the Government.  Shaffer's third, fourth, and fifth objections all reiterate the same concerns raised in his second objection, regarding his 2-level obstruction of justice enhancement.

December 2, 2016 false statement remains relevant conduct under the sentencing guidelines. As the Probation Officer points out, U.S.S.G. § 3C1.1 provides a 2-level enhancement for obstruction if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction or relevant conduct." As explained in the commentary, this enhancement applies even if there is a separate count of conviction for obstructive conduct. U.S.S.G. § 3C1.1 cmt (n.4). The commentary provides as well, a "non-exhaustive" list of examples of covered conduct, which includes "providing a false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* at cmt (n.4(G)). In his objection to this enhancement, Shaffer's primary assertion is that his dishonesty did not "significantly" obstruct the investigation.

At sentencing, the Government is prepared to call Special Agent Aaron Hawkins of the FBI, who can testify regarding Shaffer's false statements on both December 2 and February 3. The Government expects to be able to prove by a preponderance of the evidence that both statements caused significant delays and setbacks for the investigation, as Special Agent Hawkins was required to subpoena records and interview witnesses in order to investigate Shaffer's false claims. By Shaffer's own admission, he told Special Agent Hawkins on December 2, 2016 that he received some of the stolen money from his brother. In order to investigate this statement, Special Agent Hawkins had to interview Shaffer's brother, who – as Shaffer agrees – revealed this statement to be a lie. *See* PSR at ¶26, Def's Objection 1. Through the brother's statement and through Shaffer's own guilty plea, his December 2 statement has been revealed to be plainly false. Shaffer has now admitted to stealing the cash seizure, in its entirety, so it simply cannot be that he also received *some* of the money from his brother. Shaffer's claim in his motion for variance,

therefore, that he "only lied to the FBI on one occasion" is itself false.  We can all agree that Shaffer has pleaded guilty to only one count of making a false statement.  That does not, however, foreclose consideration of his additional falsity from consideration under the guidelines, nor minimize the impact of his falsity on the Government's ability to investigate and prosecute his crimes.

## The 3553(a) Factors

The Government respectfully requests that Shaffer be sentenced to a bottom-of-the-guidelines term of 12 months and one day of incarceration, followed by three years of supervised release. The 3553(a) factors, taken together, favor a custodial sentence, and for this reason, the Government strongly opposes Shaffer's motion for variance. As such, the Government's analysis of the 3553(a) factors will also include a discussion of how those factors weigh against any downward variance.

### The Nature and Circumstances of the Offense

Shaffer's criminal scheme is straightforward.  He stole nearly $80,000 in cash from a drug seizure because he wanted the money.  This alone weighs in favor of a guideline incarceration sentence, but when the circumstances of how Shaffer committed these crimes are considered, any request for a variance should be denied.

When Shaffer stole money from the City of Manning Police Department, he was the Chief – the City's highest-ranking law enforcement officer.  He was vested with substantial power to make arrests and to initiate the prosecution of hundreds, if not thousands, of people over the course of his career.

The brazenness of Shaffer's act – to simply take $80,000 from an evidence locker under his control – speaks to way he viewed his authority, and his expectations that he would not be held

accountable.  To make matters worse, when confronted by law enforcement, he lied – twice.  And he did all of this while arresting others for their crimes, and representing to the public, his law enforcement partners and employees, and the courts that he was upholding the law.

In Shaffer's letter in support of his motion for variance, he writes that he "made the wrong choice."  He claims that he "was sorry, ashamed, and mad at [himself] shortly after stealing the money and before anyone knew what [he] had done."  But Shaffer's crimes did not occur on one bad day, or in a single moment of indiscretion.  They transpired over years.  As illustrated in Paragraph 7 of the PSR, Shaffer stole nearly $80,000 and deposited the money in his account – carefully and methodologically, in *72 different transactions* – from September 19, 2015 to November 10, 2015.  And after a tip was reported to the FBI, and Special Agent Hawkins called Shaffer – over a year later, on December 2, 2016 – Shaffer did not express shame and accept responsibility.  Instead, he said he received some of the money from his brother.  He lied.  And he lied again two months after that, on February 3, 2017, when Special Agent Hawkins approached him a second time.

Each time Shaffer drove to the bank, each time he filled out a deposit slip, each time he lied to the FBI, he made *choices*.  There were dozens, and they were all wrong.

<u>The History and Characteristics of the Defendant</u>

In his motion for variance, Shaffer draws primary attention to his years of service as a law enforcement officer, his remorse, and lack of criminal history.  He also emphasizes his medical conditions and the health risk he faces from entering prison.  The Government disagrees that these are persuasive bases for a variance.

First, Shaffer's long law enforcement career does not merit favorable treatment at sentencing.  As at least one Circuit has observed, "[c]riminals who have the education and training

that enables people to make a decent living without resorting to crime are *more* rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) (emphasis added); *United States v. Jaderany*, 221 F.3d 989, 996–97 (7th Cir. 2000) ("The fact that a defendant's employment was strikingly meritorious does not require district courts to grant downward departures on this basis.") (internal quotations omitted); *see e.g., United States v. Campbell*, 491 F.3d 1306, 1317 (11th Cir. 2007) ("Further, Campbell [a former prosecutor and mayor] has failed to direct this court to evidence that his public service was so extraordinary as to justify deviating from the standard application of the Guidelines, which generally precludes consideration of public service.").  As of this sentencing, the most extraordinary aspect of Shaffer's term in office is his abuse of power; such a use of public service for personal gain should weigh against any downward variance.

To the extent Shaffer argues that his lack of criminal history should warrant a downward variance, the guidelines already account for this, and further credit is unwarranted.  More than two-thirds of those who stand convicted of economic offenses in federal court.[2]  It is not hard to imagine why: seemingly-spotless backgrounds invite the trust upon which those offenses often rely.  In fact, Shaffer would not have gained his position of power nor the ability to abuse that power had he had a prior criminal history.

Last, while Shaffer's poor health is regrettable, it is not a get-out-of-jail free card.  This Court regularly sentences defendants with all manner of medical conditions, and expects the BOP to appropriately care for and accommodate those conditions.  With respect to Shaffer's specific

---

[2] Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category, Fiscal Year 2017 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table14.pdf.).

concerns regarding COVID-19, South Carolina's four BOP facilities are faring better than the nationwide data (which Shaffer relies on in his motion) would suggest: [3]

| Facility | Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered | City | State |
|---|---|---|---|---|---|---|---|---|
| Bennettsville FCI | 26 | 12 | 0 | 0 | 65 | 5 | Bennettsville | SC |
| Edgefield FCI | 0 | 17 | 0 | 0 | 95 | 9 | Edgefield | SC |
| Estill FCI | 0 | 12 | 0 | 0 | 0 | 0 | Estill | SC |
| Williamsburg FCI | 3 | 8 | 0 | 0 | 1 | 0 | Salters | SC |

In fact, two of these facilities have lower historical infection rates than Clarendon County, where Shaffer currently resides.[4]

> The Need for the Sentence to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public From Further Crimes of the Defendant

Public Corruption and white-collar offenses must be met with sentences commiserate with the seriousness of the crimes themselves. Any sentence less than incarceration for abuse of power would promote a lack of respect for the law. This rings especially true in light of the fact that Shaffer committed these crimes while he himself was tasked with enforcing and promoting respect for the laws he violated.

Concern that "white-collar offenders… frequently do not receive sentences that reflect the seriousness of their offenses" was among the motivations for the Sentencing Reform Act that gave rise to the United States Sentencing Guidelines. S. Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3260. Among the principal architects of the Guidelines was Justice Stephen

---

[3] https://www.bop.gov/coronavirus/ (last visited September 15, 2020).

[4] https://scdhec.gov/infectious-diseases/viruses/coronavirus-disease-2019-covid-19/south-carolina-county-level-data-covid-19 (reporting that, since March 4, 2020 there have been 1,044 total reported COVID-19 cases in Clarendon County for an overall rate of 3,094 reported COVID-19 cases per 100,000 population).

Breyer, an original member of the Sentencing Commission.  He explained that the Guidelines required a "short but definite period of confinement" for all but "the least serious cases of these white-collar offenses (level '6' or less)[.]"  Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1, 22 (1988).  Not only did the applicable Guidelines reflect the severity of white-collar offenses, but it also resolved "significant disparities" observed in data gathered by the Commission on how white-collar crimes were treated at sentencing relative to equally-serious non-white-collar offenses in the pre-Guideline era.  *Id*. at 20.  In Shaffer's case, we are not in the arena of the least serious cases, and as such, imprisonment is not only called for but required.  *See* USSG § 5C1.1.

Moreover, a sentence of incarceration addresses the deterrence factor, which is so critical in corruption and fraud cases.  Fraud is "'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L.Rev. 721, 724 (2005)).  "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment."  *Id*.

In his motion for variance, Shaffer argues that his "collateral" punishments, such as loss of future employment opportunities and harm to his reputation, will adequately punish and deter him from participating in this type of crime in the future.  This argument does not hold.  First, collateral harm of this kind is "hardly unusual" in the white-collar setting.  *United States v. Cutler*, 520 F.3d 136, 170 (2d Cir. 2008).  In fact, multiple circuits have expressed skepticism over relying on collateral consequences to support lesser sentences.  *See United States v. Peppel*,707 F.3d 627, 636 (6th Cir. 2013) ("[H]umiliation before his community, neighbors, and friends—would tend to

support shorter sentences in cases with defendants from privileged backgrounds, who might have more to lose along these lines.").  In *United States v. Morgan*, the Tenth Circuit overturned a probationary sentence of a lawyer and politician noting:

> By considering publicity, loss of law license, and deterioration of physical and financial health as punishment, the court impermissibly focused on the collateral consequences of Morgan's prosecution and conviction. But § 3553(a)(2)(A) requires "the sentence imposed ... to reflect the seriousness of his offense." (Emphasis added). None of these collateral consequences are properly included in Morgan's sentence. They impermissibly favor criminals, like Morgan, with privileged backgrounds. And, paradoxically, in this case they favor a popular politician who corruptly sold influence, not only violating the law but also betraying solemn obligations and the public's trust, and who misused his license to practice law in concealing the bribes.

635 Fed.Appx. 423, 445-446 (10th Cir. 2015).  While Shaffer has suffered reputational harm, he should not receive a more lenient sentence because he lost the things he so blatantly abused.

Second, in his motion for variance, Shaffer speaks to specific deterrence, but says nothing about general deterrence.  It may be that Shaffer will never again rob, cheat, or steal.  But the message that Shaffer's sentence sends to other public officers who may be contemplating crime matters too.  When they commit serious crimes, they must suffer the same fate they've demanded of so many others: they must go to prison.  *See United States v. Young*, No. 19-4504, 2020 WL 3259260, at *5 (4th Cir. June 16, 2020) (upholding district court's conclusion that "[p]art of a court's sentence has to not only be to punish conduct, but it has to be to send messages[.]"); *United States v. Schoultz*, 340 F. App'x 852, 854 (4th Cir. 2009) (citing cases for the proposition that both specific and general deterrence are proper sentencing considerations).

<u>The Kinds of Sentences Available and Guideline Sentencing Range</u>

As cited above, an incarceration sentence is called for based upon Shaffer's guideline sentence in Zone C, of 12 to 18 months.  *See* PSR at ¶ 72-73, USSG § 5C1.1.

<u>Need to Avoid Unwarranted Sentencing Disparities</u>

For defendants in Shaffer's situation, a custodial guidelines sentence is not only appropriate, but standard. According to 2019 statistics published by the Guidelines Commission, approximately 70% of federal theft and fraud defendants have no prior criminal history.[5] Among these defendants, 75% were sentenced to prison, for an average sentence of 23 months – nearly a year beyond the Government's requested sentence in this case.

<u>The Need to Provide Restitution</u>

Having now spent nearly a year on bond, Shaffer has satisfied his restitution. However, Shaffer's obligation to pay restitution is a lawful requirement, and not something for which he should receive a benefit. To award Shaffer credit for his ability to pay would also work to create potential sentencing disparities with those of lesser means or earning potential.

## **<u>CONCLUSION</u>**

For the reasons stated above, the Government respectfully requests this Court to impose a guidelines sentence of incarceration of 12 months and one day.

Respectfully submitted,

PETER M. MCCOY, JR.
United States Attorney

By:    /s/Brook B. Andrews
BROOK B. ANDREWS (#10231)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, S.C. 29201
Telephone (803) 929-3056
Brook.Andrews@usdoj.gov

September 16, 2020

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY19.pdf (last visited September 15, 2020).